UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GRANVILLE SCRUGGS, II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 15-2205 (RJL) |
| ) | |
| BUREAU OF ENGRAVING AND ) | |
| PRINTING, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

(July 29, 2016) [Dkts. ## 4, 8]

FILED

AUG - 1 2016

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Plaintiff Granville Scruggs, proceeding *pro se*, brought this suit against defendant Bureau of Engraving and Printing for damages arising from its allegedly unlawful failure to provide plaintiff the value of the shredded money he submitted for redemption. *See generally* Notice of Removal [Dkt. # 1]. Defendant has moved to dismiss the complaint, or in the alternative for summary judgment. *See* Def.'s Mot. to Dismiss, or in the Alternative, Mot. for Summ. J. ("Def.'s Mot.") [Dkt. # 4]. Plaintiff, in turn, has moved to remand the action to state court. *See* Pl.'s Mot. to Remand to State Court ("Pl.'s Mot.") [Dkt. # 8]. Upon consideration of the pleadings, record, and relevant law, I find that this case was properly removed, and that sovereign immunity bars this suit. Therefore, plaintiff's Motion to Remand is DENIED, defendant's Motion to Dismiss is GRANTED, and all claims are dismissed.

1

## BACKGROUND

The Bureau of Engraving and Printing ("BEP") sells shredded currency as a novelty item on its website. Hensell Decl. ¶¶ 9-10 [Dkt. # 4]. This currency has never been monetized and is not legal tender. Hensell Decl. ¶ 14. Separately, the BEP redeems claims for "mutilated currency." 31 C.F.R. § 100.5(a). Mutilated currency is currency that has been so damaged, for example by fire, water, chemicals, or animals, that "its value is questionable." 100 C.F.R. § 100.5(b)(ii).

Plaintiff contacted the BEP on February 11, 2014 to inquire about his previously submitted mutilated currency claim. Hensell Decl. ¶ 6. In April 2014, the BEP discovered that the plaintiff's package had been mistakenly directed to the Office of External Relations ("OEX") Public Sales Group. Hensell Decl. ¶ 8. "The package OEX received from Plaintiff contained shredded currency still in the original BEP OEX Public Sales packaging," including "a large sticker of the official BEP seal on each bag." Hensell Decl. ¶ 10. A subsequent investigation determined that the contents of the package that plaintiff sent were "currency shreds sold by OEX and not mutilated currency." Hensell Decl. ¶ 13. OEX determined that the currency submitted by the plaintiff had been sold to Mr. Douglas Hornsby, who shares the same mailing address as the plaintiff. Hensell Decl. ¶¶ 10-11. On April 16, 2014 the Department of the Treasury's Office of Inspector General ("OIG") and the FBI "issued a cease and desist warning to [Plaintiff] and advised him that his conduct was in violation of both criminal and civil law." Hensell Decl. ¶ 23. On April 24, 2014, the BEP forwarded plaintiff's

claim to an investigator at the BEP Office of Security for further review. Hensell Decl. ¶ 12. On May 7, 2014, BEP's Mutilated Currency Division informed Plaintiff that his claim had been denied and stated, "a preliminary inquiry reveals that the four (4) five pound bags of currency shred were purchased on December 27, 2013 by Mr. Douglas Hornsby who shares the same mailing address" as plaintiff. Hensell Decl. ¶ 14. The BEP informed plaintiff that the shreds are composed of defective currency product, was never monetized (released to the public as legal tender) and therefore could not be processed for redemption. Hensell Decl. ¶ 14. That same day, plaintiff expressed dissatisfaction with the ruling and denied any affiliation with Douglas Hornsby. Hensell Decl. ¶ 15. The BEP indicated that the decision would not be reversed and suggested plaintiff contact the OIG with any further questions. Hensell Decl. ¶ 16.

In a May 7, 2014 email to the BEP, plaintiff admitted that the shredded currency had been purchased, stating, "You all have four bags of shreds I sent in from a friend who paid cash for them." Tryst Decl. Ex. C at 1. [Dkt. # 4-2]. In October and November of 2014, plaintiff requested information about two new claims. Hensell Decl. ¶¶ 18-19. By December 8, 2014, BEP's Mutilated Currency Division had forwarded all the records of its email correspondence with the plaintiff to its Office of Security. Hensell Decl. ¶ 17. In February 2015, the BEP Chief Counsel's Office notified plaintiff that pursuant to 28 U.S.C. §2401(b) he needed to submit his claim in writing to the appropriate federal agency (in this case, the BEP) within two years of the claim accruing. Bailey Decl. ¶ 8. Plaintiff

3

replied on March 17, 2015, stating that he would not file again. Bailey Decl. ¶ 9. In a letter dated April 13, 2015 to the BEP Chief Counsel's Office, plaintiff withdrew his potential tort claim. Bailey Decl. ¶ 13. On June 23, 2015 plaintiff sent a proposed settlement offer to the BEP Director, offering to accept payment of $728, 957 in exchange for waiving his right to trial. Bailey Decl. ¶ 14. In September 2015, the OIG released its final report regarding plaintiff's claims, noting he had been contacted by the OIG and the FBI and warned that his conduct exposed him to both civil and criminal liability. Hensell Decl. ¶ 23.

On November 10, 2015, plaintiff filed suit under the Federal Tort Claims Act in the District of Columbia Superior Court. Notice of Removal 2. Plaintiff alleges abuse of process in the review and consideration of his mutilated currency claims, stating he "has been trying since October 2014 to receive a status update or payment[,] but the Defendant is abusing the process of mutilated currency redemption." Ex. A at 3, Compl. [Dkt. # 1-1]. On December 18, 2015, defendant removed the case to this Court. Notice of Removal 2. Currently before the Court are defendant's motion to dismiss the complaint, or in the alternative for summary judgment, *see* Def.'s Mot., as well as plaintiff's motion to remand the action to state court. *See* Pl.'s Mot.[1]

---

[1] Plaintiff argues that this case was improperly removed and should be remanded to Superior Court. Plaintiff is incorrect. Defendants properly removed this case pursuant to 28 U.S.C. §§ 1442(a), 1446, and 2679. Section 1442(a) provides for the removal of any "civil action or criminal prosecution that is commenced in a State court and that is against[,]" *inter alia*, "[t]he United States or any agency thereof[,]" to "the district court of the United States for the district and division embracing the place wherein it is pending[.]" 28 U.S.C. § 1442(a)(1). Unfortunately for plaintiff, "[t]he Bureau of

## STANDARD OF REVIEW

Defendant has moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6), or in the alternative for summary judgment under Federal Rule of Civil Procedure 56. In such a situation, a court should consider the Rule 12(b)(1) jurisdictional challenges before the Rule 12(b)(6) arguments. *See United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 920-21 (D.C. Cir. 1999).

When a defendant files a motion to dismiss a complaint for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). In considering a 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, a court need not limit itself to the complaint, but rather "may consider such materials outside the pleadings as it deems appropriate to resolve the question

---

Engraving and Printing is a bureau in the Department of the Treasury[,]" 31 U.S.C. § 303(a), and "[t]he Department of Treasury is an executive department of the United States Government[,]" 31 U.S.C. § 301(a). Thus, the District Court has exclusive jurisdiction over this matter, *see* 28 U.S.C. § 1346(b), and removal is, therefore, authorized pursuant to 28 U.S.C. §§ 1442(a) and 2679 of the Federal Tort Claims Act. As such, plaintiff's Motion to Remand is DENIED.

whether it has jurisdiction in the case." *Bank of America, N.A. v. FDIC*, 908 F. Supp. 2d 60, 76 (D.D.C. 2012) (quotation marks omitted).

## ANALYSIS

Defendant presents multiple arguments as to why this case should be dismissed. I need not look any further, however, than the threshold jurisdictional issue of sovereign immunity.

The United States is generally immune from suit unless there is explicit statutory waiver of its sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 ("Absent a waiver, sovereign immunity shields the Federal Government and its agents from suit."). "Sovereign immunity is jurisdictional in nature," so a claim barred by sovereign immunity lacks subject matter jurisdiction and may be dismissed under a 12(b)(1) motion. *Id.* Further, the "plaintiff bears the burden of establishing that sovereign immunity has been abrogated." *Stone v. Holder*, 859 F. Supp. 2d 48, 51 (D.D.C. 2012) (citing *Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006) (quoting *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d. 571, 575 (D.C. Cir. 2003))).

One avenue for statutory waiver of sovereign immunity is the Federal Tort Claims Act ("FTCA").[2] The FTCA operates as a limited waiver of sovereign

---

[2] Under 28 U.S.C. § 2679(a), only the United States can be a defendant to a claim under the FTCA. Plaintiff's pleadings are thus defective insofar as they name the BEP, not the United States, as the defendant. Because plaintiff is proceeding *pro se*, his filings should be held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), so I decline to dismiss the case on the basis of that curable defect. *See also Lineberry v. Fed. Bureau of Prisons*, 923 F. Supp. 2d 284, 291 (D.D.C. 2013) (declining "to dismiss the FTCA case or otherwise penalize this *pro se* plaintiff for a pleading defect which could be remedied by amending the complaint").

immunity, rendering the United States amenable to suit for certain tort claims, subject to various exceptions set forth in 28 U.S.C. § 2680. *See, e.g., Richards v. United States*, 369 U.S. 1, 6 (1962); *Millbrook v. United States*, 133 S. Ct. 1441, 1443 (2013). One such exception preserves sovereign immunity in claims against the government for certain intentional torts. *See* 28 U.S.C. § 2680(h) (sovereign immunity bars "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights"). This is known as the "intentional tort exception." *Millbrook*, 133 S. Ct. at 1443.

The intentional tort exception has its own exception, known as the "law enforcement proviso," wherein sovereign immunity is waived. *Id.* This proviso "extends the waiver of sovereign immunity to claims for six intentional torts, including assault and battery, when they are based on the acts of omissions of law enforcement officers." *Id.* Therefore, while the government retains sovereign immunity against suits for most intentional torts, waiver occurs if one of six enumerated torts was committed by a law enforcement or investigative officer "acting within the scope of his office or employment." *Id.* at 1445. Here, plaintiff is alleging abuse of process, one of the six enumerated intentional torts. 28 U.S.C. § 2680(h). Consequently, his claim can only proceed if he alleges, *inter alia*, that he is suing based on acts by a law enforcement or investigative officer. Unfortunately, he isn't.

The relevant BEP employees who reviewed plaintiff's mutilated currency

claim are not law enforcement or investigative officers potentially subject to waiver of sovereign immunity. Section 2680(h) defines "investigative or law enforcement officer" to mean "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* Here, plaintiff alleges abuse of process in the review and consideration of his mutilated currency claims by BEP officials.[3] Plaintiff's complaint is devoid of any facts that suggest the relevant BEP officials constitute investigative or law enforcement officers under Section 2680(h). Indeed, such employees of BEP's Mutilated Currency Division are merely authorized to examine claims to determine the validity and value of voluntarily submitted mutilated currency claims. *See* 31 C.F.R. § 100. While the Mutilated Currency Division may refer suspicious claims to the BEP Office of Security, as it did in this case, it is not empowered to do any of the things listed in Section 2680(h). *Id.*; *compare Caban v. United States*, 671 F.2d 1230, 1233 (2d Cir. 1982) (INS agents fall within reach of Section 2680(h) given, *inter alia*, statutorily provided power to make arrests). While the Office of Security alerted the plaintiff that he was exposing himself to potential civil and criminal liability with his conduct, Hensell Decl. ¶ 23, the BEP did not (and could not) undertake any investigative or law enforcement role itself. *Accord Metz v. United States*, 788 F.2d 1528, 1532 (11th Cir. 1986) (governmental liability based on conduct by law enforcement

---

[3] To the extent plaintiff's two-page complaint may also be liberally construed as one of willful misrepresentation and deceit, the FTCA does not waive immunity for willful misrepresentation or deceit and, thus, sovereign immunity would bar those claims as well. *See Lewis v. United States*, 83 F. Supp. 3d 198, 206 (D.D.C. 2015).

officers under Section 2680(h) "cannot be expanded to include governmental actors who procure law enforcement actions, but who are themselves not law enforcement officers"). Because plaintiff does not and cannot plausibly allege he is suing a law enforcement or investigative officer, his claims are barred by sovereign immunity.

## CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's Motion to Remand to State Court and GRANTS defendant's Motion to Dismiss. An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge